# IN THE SUPREME COURT, STATE OF WYOMING

## 2015 WY 90

*April Term, A.D. 2015*

**July 2, 2015**

BOARD OF PROFESSIONAL
RESPONSIBILITY, WYOMING
STATE BAR,

Petitioner,

v.

NICHOLAS T. HADERLIE, WSB
#7-4854,

Respondent.

D-15-0003

## ORDER OF PUBLIC CENSURE

[¶1]  **This matter** came before the Court upon a "Report and Recommendation for Public Censure," filed herein June 23, 2015, by the Board of Professional Responsibility for the Wyoming State Bar, pursuant to Section 16 of the Disciplinary Code for the Wyoming State Bar (stipulated discipline).  *See also* Rule 26(f) of the Wyoming Rules of Disciplinary Procedure, effective July 1, 2015 ("These rules shall become effective July 1, 2015, and any discipline or disability investigation pending on that date shall proceed under these rules.  Any matter then pending with respect to which a formal charge has been filed shall be concluded under the procedure existing prior to the effective date of these rules.").  The Court, after a careful review of the Board of Professional Responsibility's Report and Recommendation, and the file, finds that the Report and Recommendation should be approved, confirmed, and adopted by the Court, and that Respondent Nicholas T. Haderlie should be publicly censured for his conduct.  It is, therefore,

[¶2]  **ADJUDGED AND ORDERED** that the Board of Professional Responsibility's Report and Recommendation for Public Censure, which is attached hereto and incorporated herein, shall be, and the same hereby is, approved, confirmed, and adopted by this Court, with one exception.  This Court will not order Respondent to remain

compliant with his monitoring agreement with the Wyoming Professional Assistance Program. While this Court certainly agrees Respondent should remain compliant, the Court does not believe it is the appropriate authority in this case to monitor such agreement; and it is further

[¶3] **ADJUDGED AND ORDERED** that Nicholas T. Haderlie is hereby publicly censured for his conduct, which is described in the Report and Recommendation for Public Censure. This public censure shall include issuance of a press release consistent with the one set out in the Report and Recommendation for Public Censure; and it is further

[¶4] **ORDERED** that, pursuant to Section 26 of the Disciplinary Code for the Wyoming State Bar, Mr. Haderlie shall reimburse the Wyoming State Bar the amount of $50.00, representing the costs incurred in handling this matter, as well as pay the administrative fee of $500.00. Mr. Haderlie shall pay the total amount of $550.00 to the Wyoming State Bar on or before August 31, 2015; and it is further

[¶5] **ORDERED** that the Clerk of this Court shall docket this Order of Public Censure, along with the incorporated Report and Recommendation for Public Censure, as a matter coming regularly before this Court as a public record; and it is further

[¶6] **ORDERED** that, pursuant to Section 4(a)(iv) of the Disciplinary Code for the Wyoming State Bar, this Order of Public Censure, along with the incorporated Report and Recommendation for Public Censure, shall be published in the Wyoming Reporter and the Pacific Reporter; and it is further

[¶7] **ORDERED** that the Clerk of this Court cause a copy of this Order of Public Censure to be served upon Respondent Nicholas T. Haderlie.

[¶8] **DATED** this 2nd day of July, 2015.

BY THE COURT:

/s/

**E. JAMES BURKE**
**Chief Justice**

IN THE SUPREME COURT
STATE OF WYOMING
FILED

JUN 2 3 2015

CAROL THOMPSON, CLERK

by CHIEF DEPUTY

D-15-0003

BEFORE THE SUPREME COURT

STATE OF WYOMING

In the matter of ) 
NICHOLAS T. HADERLIE, ) 
WSB No. 7-4854, ) WSB No. 2015-023
 ) 
Respondent. )

## REPORT AND RECOMMENDATION FOR PUBLIC CENSURE

The Board of Professional Responsibility makes the following Report and Recommendation, with its findings of fact and recommendation to the Supreme Court of Wyoming:

### FINDINGS OF FACT

1.     Respondent is an active member in good standing of the Wyoming State Bar, admitted to practice in 2011. Since his admission, Respondent has engaged in the practice of law in Sheridan, Wyoming.

2.     On the afternoon of Sunday, October 19, 2014, Respondent was arrested at his home in Sheridan. Although Respondent was extremely intoxicated at the time, his recollection of the events leading to his arrest, which is generally corroborated by the police report, is as follows:

    a.     Shortly before 2:00 p.m. on Sunday, October 19, 2014, Carl Clements, an off-duty Wyoming Highway Patrolman, observed a vehicle Respondent was driving crash into a mechanical gate at the Sheridan airport. The gate restricts access to the airport on Hangar Avenue, a two-lane road. Trooper Clements said Respondent drove into the gate as if he did not see it, making no attempt to brake. The damage Respondent did to the gate cost more than $11,000 to repair.

b.     Trooper Clements tried to get Respondent to stay on the scene until law enforcement arrived, but Respondent drove off.

c.     Trooper Clements called in a REDDI report with a description and license plate of Respondent's vehicle. A while later, two female members of the Sheridan Police Department, Officer Kennedy and Officer Rogers, found the truck parked in Respondent's driveway with damage to the front end. They knocked on the front door and were greeted by Respondent's wife, who went to get Respondent.

d.     Respondent initially refused Officer Kennedy's request to step outside of the house. When Officer Rogers left the front porch and started to walk around the side of the house, Respondent told the officer she could not go in the house or on Respondent's property without a warrant. Respondent then came out of the house. At some point, a male police officer, Corporal Gerleman, arrived to give assistance to the two female officers.

e.     Respondent refused Officer Kennedy's requests that Respondent submit to field sobriety and portable breath tests. Respondent announced that he was going back into the house. As Officer Kennedy attempted to keep Respondent from reentering the house, Officer Rogers and Corporal Gerleman came to her aid. A physical confrontation ensued, with the three officers taking Respondent to the front yard and subduing Respondent after significant struggle and resistance by Respondent.

f.     Additional officers arrived on the scene, including police officer, Sergeant Hill, and a deputy from the Sheridan County Sheriff's Office, Deputy Dahmke. Sergeant Hill and Corporal Gerleman then attempted to get Respondent into the back seat of Of-

2

ficer Kennedy's patrol vehicle, and another struggle ensued. On multiple occasions during the altercation Respondent yelled foul language and cursed at the officers.

g. When the two male officers, assisted by Officer Rogers, finally got Respondent into the patrol vehicle and shut the doors, Respondent slipped his hands from behind his back—something he was able to accomplish because they used two sets of handcuffs in order to ease the strain on Respondent's shoulder that had recently been injured. While Respondent was being transported to the jail, he goaded and harassed the police officers by asking questions like whether they had shot anyone and whether they went to college.

h. While Respondent was being booked at the jail, Officer Kennedy filled out the necessary paperwork and obtained a warrant for a blood draw to determine Respondent's blood alcohol level. Respondent continued to be uncooperative as law enforcement personnel escorted him to an ambulance for the blood draw. As EMTs attempted to find a vein in his arm, Respondent chided them for not knowing what they were doing.

i. Respondent was then transported to the hospital to see a phlebotomist, who initially had the same difficulty finding a vein. Respondent continued to be uncooperative. A male nurse was summoned who was finally able, nearly four hours after Trooper Clements' REDDI call, to get a sufficient sample. Respondent was returned to the jail.

j. The blood test revealed a .27 blood alcohol level. Respondent was cited for violations of Wyoming Statutes § 31-5-233 (Driving or having control of vehicle while under the influence of intoxicating liquor or controlled substances), § 31-5-1104

3

(Duty upon colliding with unattended vehicle or property), and § 6-5-204(a) (Interference with peace officer).

k.     Corporal Gerleman sprained his thumb in the struggle to arrest Respondent. The following day, it was swollen and sore enough to require medical care.

3.     Respondent promptly reported the arrest to Bar Counsel and contacted Jack Speight, Director of the Wyoming Lawyer Assistance Program ("WyLAP"). At Mr. Speight's suggestion, Respondent contacted the Wyoming Professional Assistance Program ("WPAP") and filled out paperwork to participate in WPAP's monitoring of his rehabilitation.

4.     Respondent also promptly reported these circumstances to the firm where he is employed and voluntarily entered into a "return to work" agreement, compliance with which became a condition of his continued employment. Under the agreement, Respondent agreed to, among other things, submit to an immediate medical evaluation, follow all medical treatment recommendations, and authorize the firm to access his medical records so that it could monitor his compliance with the terms of the agreement.

5.     Respondent underwent a full alcohol evaluation by a licensed addiction therapist and promptly checked himself into residential treatment, where he remained from October 27, 2014, until November 24, 2014, when Respondent was successfully discharged. Respondent enrolled in the recommended aftercare program, consisting of group therapy, individual counseling and attendance at 12-Step meetings. Respondent faithfully complied with all recommended aftercare.

6.     Shortly after his discharge from residential treatment, Respondent entered into a plea agreement which included guilty pleas to the DWUI charge and to interference with a peace officer, both misdemeanors. On November 26, 2014, Respondent was sentenced to 30

4

days in jail, two years of probation (first year supervised, second year unsupervised) and payment of $11,730.07 in restitution. Respondent fully complied with all terms of his judgment and sentence.

7. Respondent entered into a monitoring agreement with WPAP at his own expense, which includes two years of monitoring to coincide with Respondent's probationary term, portable breathalyzer testing three times per day and random urinalysis testing. Respondent's monitoring agreement authorizes WPAP to report any positive breathalyzer or urinalysis tests to Bar Counsel. Respondent has acknowledged that failure to abide by the monitoring agreement will be regarded as conduct that reflects adversely on Respondent's fitness as a lawyer and may result in further disciplinary proceedings.

8. Respondent sent letters of apology to all law enforcement officers who witnessed his conduct, and provided copies of those letters to Bar Counsel. Respondent remains gainfully employed by the Sheridan law firm with which he was employed at the time of his arrest.

9. Respondent is extremely ashamed of his conduct on October 19, 2014, and promised himself never to behave that way again. Respondent used this incident as a learning tool to better himself personally and professionally and has now been sober for over seven months. Respondent believes that he is a better person as a result of this event and his ongoing efforts at rehabilitation.

10. Respondent acknowledged that his conduct in connection with the October 19, 2014 arrest constituted a violation of Rule 8.4(b) (criminal conduct that reflects adversely on a lawyer's fitness as a lawyer) and Rule 8.4(d) (conduct prejudicial to the administration of justice). Respondent further acknowledged that such conduct seriously adversely reflects on his fitness to practice. Respondent stipulated to a public censure, subject to the approval of the

5

Board of Professional Responsibility and the Wyoming Supreme Court. Respondent confirmed his understanding that if the Board declines to approve the stipulation, or if the Wyoming Supreme Court declines to approve the Board's report and recommendation with respect to the stipulation, then Respondent's affidavit is void and shall be deemed withdrawn and shall not be admissible in any hearing on this matter.

## ABA SANCTION GUIDELINES

11.   In making recommendations for public discipline to the Court, this Board applies the American Bar Association's Standards for Imposing Lawyer Discipline ("ABA Standards). ABA Standard 3.0 lists the four factors to be considered in imposing a sanction after a finding of lawyer misconduct:

(a)   the duty violated;
(b)   the lawyer's mental state;
(c)   the potential or actual injury caused by the lawyer's misconduct; and
(d)   the existence of aggravating or mitigating factors.

*See Bd. of Prof. Resp. v. Stinson*, 337 P.3d 401, 420 (Wyo. 2014).

12.   Misconduct of the sort engaged in by Respondent, which essentially involves violation of duties owed to the public, is addressed in Section 5.1, "Failure to Maintain Personal Integrity."

> Absent aggravating or mitigating circumstances, upon application of the factors set out in Standard 3.0, the following sanctions are generally appropriate in cases involving commission of a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects, or in cases with conduct involving dishonesty, fraud, deceit or misrepresentation:
> 5.11 Disbarment is generally appropriate when:
>> (a) a lawyer engages in serious criminal conduct, a necessary element of which includes intentional interference with the administration of justice, false swearing, misrepresentation, fraud, extortion, misappropriation, or theft; or the sale, distribution or importation of controlled substances; or the intentional killing of another; or an attempt

6

or conspiracy or solicitation of another to commit any of these offenses; or

(b) a lawyer engages in any other intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice.

5.12 Suspension is generally appropriate when a lawyer knowingly engages in criminal conduct which does not contain the elements listed in Standard 5.11 and that seriously reflects on the lawyer's fitness to practice.

5.13 Reprimand (i.e., Public Censure under Section 4(a)(iii) of the Disciplinary Code for the Wyoming State Bar) is generally appropriate when a lawyer knowingly engages in any other conduct that involves dishonesty, fraud, deceit or misrepresentation that adversely reflects on the lawyer's fitness to practice law.

5.14 Admonition (i.e., Private Reprimand under Section 4(b) of the Disciplinary Code) is generally appropriate when a lawyer engages in any other conduct that reflects adversely on the lawyer's fitness to practice law.

13.     In Respondent's case the presumptive discipline, absent the application of aggravating and mitigating circumstances, is a suspension. However, as further discussed below, consideration of the aggravating and mitigating circumstances present in this case weigh in favor of a public censure.

14.     Section 9.1 of the ABA Standards provides for consideration of aggravating and mitigating circumstances in deciding on an appropriate sanction. Section 9.21 defines aggravating circumstances as "any consideration, or factors that may justify an increase in the degree of discipline to be imposed." Section 9.31 defines mitigating circumstances as "any considerations, or factors that may justify a reduction in the degree of discipline to be imposed."

15.     The aggravating factors present in Respondent's case are Section 9.22(d) (multiple offenses) and Section 9.22(k) (illegal conduct). However, these aggravating factors are more than outweighed by the following substantial, mitigating factors:

1.  Section 9.32(a) (absence of a prior disciplinary record);
2.  Section 9.32(d) (timely good faith effort to make restitution or to rectify consequences of misconduct);

7

3. Section 9.32(e) (full and free disclosure to Bar Counsel and a cooperative attitude toward proceedings);

4. Section 9.32(i) (recovery from alcohol dependency as demonstrated by a meaningful and sustained period of successful rehabilitation);

5. Section 9.32(k) (imposition of other penalties and sanctions); and

6. 9.32(l) (remorse).

16. In the event the Court issues a public censure, Respondent has agreed to the issuance of the following press release:

The Wyoming Supreme Court today issued a public censure to Sheridan lawyer Nicholas T. Haderlie. Mr. Haderlie had a single-vehicle accident while driving under the influence of alcohol resulting in substantial damage to a fence. Haderlie left the scene of the accident and returned to his house. When law enforcement personnel arrived at his house, Mr. Haderlie refused to cooperate and a physical altercation ensued as the peace officers attempted to place Mr. Haderlie under arrest. Haderlie's blood alcohol was later determined to be .27. He was charged with DWUI, leaving the scene of an accident, and interference with a peace officer.

Mr. Haderlie promptly self-reported to State Bar disciplinary authorities and his employer. Mr. Haderlie pleaded guilty to DWUI and to interference with a peace officer, both misdemeanors. He was sentenced to thirty days in jail, two years' probation (the first year supervised) and ordered to pay $11,730.07 in restitution for the damage to the fence. Mr. Haderlie has been fully compliant with his judgment and sentence. Mr. Haderlie also voluntarily sought treatment and entered into a two-year monitoring agreement with Wyoming Professional Assistance Program to monitor his sobriety, at his sole expense.

In approving Mr. Haderlie's stipulated motion for a public censure, the Board of Professional Responsibility considered the nature of Mr. Haderlie's misconduct, which violated his duty to maintain personal integrity, and also considered applicable aggravating and mitigating factors. Aggravating factors included the presence of two misdemeanor offenses to which he pleaded guilty. Mitigating factors included the absence of a prior disciplinary record; timely good faith effort to make restitution or to rectify consequences of misconduct; full and free disclosure to Bar Counsel and a cooperative attitude toward proceedings; recovery from alcohol dependency as demonstrated by a meaningful and sustained period of successful rehabilitation; imposition of other penalties and sanctions; and remorse.

The Board of Professional Responsibility submitted a report and recommendation for a public censure of Mr. Haderlie to the Wyoming Supreme Court. In accepting the Board's recommendation and issuing an Order of Public Censure,

8

the Court ordered Mr. Haderlie to pay an administrative fee of $500 and costs of $50 to the Wyoming State Bar.

## RECOMMENDATION

In consideration of the foregoing, the Board recommends:

(1) That Respondent receive a public censure;

(2) That Respondent be ordered to remain compliant with his monitoring agreement with Wyoming Professional Assistance Program; and

(3) That Respondent be ordered to pay an administrative fee of $500.00 and costs of $50.00 to the Wyoming State Bar.

Dated this 23rd day of June, 2015.

Jenifer E. Scoggin, Chair
*for the*
Board of Professional Responsibility
Wyoming State Bar

9